United States District Court
Southern District of Texas

**ENTERED**

June 08, 2018

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANDRE CAINE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-17-2046 |
| | § | |
| WELLS FARGO BANK, N.A., ET AL., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending and referred is Defendant's Motion to Dismiss Third Amended Complaint (Document No. 38), in which Defendant Wells Fargo Bank, N.A. argues that Plaintiff Andre Caine ("Caine") has failed to state a claim for which relief may be granted. Having considered the motion, the response in opposition, the claims and allegations in Plaintiff's Third Amended Complaint (Document No. 37), and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Wells Fargo's Motion to Dismiss (Document No. 38) be GRANTED and that Caine's claims against Wells Fargo all be dismissed pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim.

## I.      Background

After having discovered that a mortgage loan was reported twice on his credit reports, Plaintiff Andre Caine contacted Wells Fargo Bank, N.A. ("Wells Fargo") about the inaccuracies. Wells Fargo responded to that inquiry with a letter dated January 25, 2017, stating that it had "notified the consumer reporting agencies . . . to remove the payment history prior to December 1, 2016." Despite that communication, Caine filed suit against Wells Fargo in state court in June 2017,

complaining about the inaccurate and derogatory information Wells Fargo had reported to consumer

reporting agencies, and alleging that the inaccurate and derogatory information had affected his

ability to purchase a new home.  Wells Fargo removed the case to this Court on the basis of federal

question jurisdiction – Caine having pled a claim under the Fair Credit Reporting Act – and promptly

filed a Rule 12(b)(6) Motion to Dismiss.  That was followed by the filing of two Amended

Complaints (Document Nos. 17 & 27), and Wells Fargo's filing of a successor Rule 12(b)(6) Motion

to Dismiss (Document Nos. 19), and a Motion to Strike Caine's Second Amended Complaint

(Document No. 30).  Following a Rule 16 Scheduling Conference, Caine filed, without objection,

his Third Amended Complaint (Document No. 37).

In that Third Amended Complaint (Document No. 37), Caine asserts claims against Wells

Fargo for: (1)  breach of contract; (2) negligent misrepresentation; (3) violations of the Texas

Deceptive Trade Practices Act; (4) fraud; (5) tortious interference with prospective contracts; (6)

tortious interference with existing contracts; and (7) violations of the Fair Credit Reporting Act.

Wells Fargo, in its current Motion to Dismiss (Document No. 38), argues that Caine has not, and

cannot, state a plausible claim against it because Plaintiff's Third Amended Complaint contains

allegations that "in March 2017, all three credit bureaus removed the old loan number from their

reports, removed the loan balance for the old number and removed the late payments" and that the

"credit report dated August 1, 2017 attached to the Amended Complaint reflects that the loan for the

Property is being reported as a closed account." *See* Wells Fargo's Motion to Dismiss (Document

No. 38) at 3.  According to Wells Fargo, Caine's own allegations in his Third Amended Complaint

defeat each of his claims.

Caine, in response to Wells Fargo's Motion to Dismiss, maintains that his claims are all

2

based on "the improper double reporting of late payments for the months of August 2016, October 2016, and November 2016," which double reporting affected his credit rating and his ability to purchase a new home. Caine also argues, in response to the Motion to Dismiss, that if his allegations are found to be insufficient he should be allowed to again amend his complaint.

## II.     Rule 12(b)(6) Standard

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is said to be plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. Plausibility will not be found where the claim alleged in the complaint is based solely on legal conclusions, or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Nor will plausibility be found where the complaint "pleads facts that are merely consistent with a defendant's liability" or where the complaint is made up of "'naked assertions devoid of further factual enhancement.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557)). Plausibility, not sheer possibility or even conceivability, is required to survive a Rule 12(b)(6) motion to dismiss. *Twombly*, 550 U.S. at 556-557; *Iqbal*, 129 S.Ct. at 1950-1951.

In considering a Rule 12(b)(6) motion to dismiss, all well pleaded facts are to be taken as true, and viewed in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236

(1974). But, as it is only *facts* that must be taken as true, the court may "begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, at 1950. It is only then that the court can view the well pleaded *facts*, "assume their veracity and [ ] determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, at 1950.

### III.    Discussion - Plausibility of Plaintiff's Claims

The basis for all of Caine's claim is that Wells Fargo changed the loan number on the mortgage loan he had on the property located at 6414 Crim Court, Houston, Texas 77049, and reported that loan, and three admittedly late payments on that loan, twice to credit reporting bureaus under two different loan numbers. While Caine alleges, and has attached to his Complaint an Equifax credit report from August of 2017, which shows that the double reporting error was corrected, *see* Document No. 37-2 at 3 (reflecting that one of the two mortgage loan accounts was "closed"), he maintains that the double reporting error, during the time it was on his credit report, damaged him and his ability to purchase a new home. It is within the context of this general framework of allegations that each of Caine's claims will be considered for plausibility.

#### A.    Breach of Contract Claim

Caine alleges in his Third Amended Complaint in support of his breach of contract claim that "[t]he parties had an agreement, more specifically a loan agreement," [t]he agreement provided that [Wells Fargo] was to administer and service the loan in accordance with the terms of the loan agreement," "[t]he loan was a valid contract," "Plaintiff performed under the contract," "[Wells Fargo] breached the contract when it failed to uphold its portion of the agreement and began

4

reporting two mortgages and untrue late payments without any explanation or validation," and "Plaintiff has been harmed by [Wells Fargo's] breach of contract in at least the amount of $75,000." Third Amended Complaint (Document No. 37) at 6.

To state a claim for breach of contract under Texas law, a plaintiff must allege "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *American General Life Ins. Co. v. Kirsch*, 378 F. App'x 379, 383 (5th Cir. 2010); *see also Valero Mktg. & Supply Co. v. Kalama Int'l*, 51 S.W. 3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.). But, it is not enough to generally allege the existence of a contract and generally allege that a contract had been breached. Instead, to state a plausible breach of contract claim a plaintiff must allege which provision of an identified contract has been breached. *Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x 233, 238 (5th Cir. 2014) ("It has been held that a claim for breach of a note and deed of trust must identify the specific provision in the contract that was breached."); *Baker v. Great N. Energy, Inc.*, 64 F. Supp. 3d 965, 971 (N.D. Tex. 2014) ("This Court and others throughout this Circuit have consistently indicated that, as a general rule, 'a plaintiff suing for breach of contract must point to a specific provision in the contract that was breached by the defendant.'"); *Garza v. J.P. Morgan, Alternative Loan Trust, 2007-SI, Mortg. Pass-Through Certificates*, No. 1:17CV82, 2017 WL 6513655, at *5 (S.D. Tex. Oct. 25, 2017), *report and recommendation adopted*, No. CV B-17-082, 2017 WL 6498142 (S.D. Tex. Dec. 18, 2017) ("To prevail, a plaintiff must identify a contract and the specific provisions of that contract that the defendant allegedly breached.").

Here, despite having now filed a Third Amended Complaint, Caine has not articulated, or pointed to, any specific provision in any contract he had with Wells Fargo that has been breached.

5

He has therefore not stated a plausible breach of contract claim. In addition, given Caine's admission in his Third Amended Complaint that there were several late payments on his mortgage loan, Caine himself had not complied with the contractual provisions of the loan agreement and is, therefore, not in a position to maintain a cause of action against Wells Fargo for breach of contract. *Mustang Pipeline Co. v. Driver Pipeline Co.,* 134 S.W.3d 195, 196 (Tex. 2004) ("It is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance."); *Gulf Pipe Line Co. v. Nearen,* 138 S.W.2d 1065, 1068 (Tex. 1940) ("It is also elementary that a party to a contract who is himself in default cannot maintain a suit for its breach"). For these reasons, Caine has not stated a plausible breach of contract claim.

### B.   Negligent Misrepresentation Claim

In support of his negligent misrepresentation claim, Caine alleges in his Third Amended Complaint that "[Wells Fargo] made a representation to the Plaintiff in the course of [Wells Fargo's] business or in a transaction in which [Wells Fargo] had an interest. [Wells Fargo] represented they would accurately administer the loan according to the terms of the loan agreements," [Wells Fargo] supplied false information for the guidance of the Plaintiff, as the statement that the second loan was no longer being reported on the credit bureaus, when in fact it was and still is today. [Wells Fargo] did not exercise reasonable care or competence in obtaining or communicating the information," and "Plaintiff justifiably relied on the representations and [Wells Fargo's] negligent misrepresentations caused the Plaintiff's injury." Third Amended Complaint (Document No. 37) at 6-7.

A negligent misrepresentation claim under Texas law requires allegations and proof that: "(1) the representation is made by a defendant in the course of his business, or in a transaction in

6

which he has a pecuniary interest; (2) the defendant supplie[d] 'false information' for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffer[ed] pecuniary loss by justifiably relying on the representation." *Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991). "[I]n order to prevail on a claim of negligent misrepresentation in Texas, the misrepresentation at issue must be one of existing fact because 'under Texas law, promises of future action are not actionable as a negligent-misrepresentation tort.'" *Jackson v. Wells Fargo Bank, N.A.*, Case No. 4:12CV524-RAS-DDB, 2013 WL 4414862, at \*7 (E.D. Tex. Aug. 14, 2013) (citing *De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 F. App'x 200, 205 (5th Cir.2012)).

Here, for two reasons, Caine has not alleged a plausible claim for negligent misrepresentation. First, the negligent misrepresentation claim is based on a representation that Wells Fargo "would" accurately administer the loan. That alleged representation of future action is not actionable. Second, Caine's allegation that Wells Fargo misrepresented the existence of a second loan is not a misrepresentation that was made *to* Caine. Instead, the inaccuracy was alleged to have been reported by Wells Fargo to credit reporting agencies. Caine's allegations in support of his negligent misrepresentation claim do not tie any alleged misrepresentation by Wells Fargo of an existing fact *to him* – meaning Caine does not allege that Wells Fargo misrepresented *to him* the existence of a second loan. For those two independent reasons, Caine has not alleged a plausible negligent misrepresentation claim against Wells Fargo.

### C.   Texas Deceptive Trade Practices Act Claim

Caine alleges in his Third Amended Complaint that Wells Fargo violated the Texas Deceptive Trade Practices Act ("DTPA") by representing "that certain payments on the account(s)

7

made the basis of this lawsuit were late, when they were not," by reporting "a second loan on Plaintiff's credit that was improper and should not have been reported," and by misleading "Plaintiff by stating the loan would be removed and that the loan had been removed, when in actuality the loan had been returned to the credit report and is reporting to this date."  Third Amended Complaint (Document No. 37) at 7-8.

Each of the alleged misrepresentations made the basis of Caine's DTPA claim(s) were made in connection with Caine's mortgage loan and Wells Fargo's servicing of the mortgage loan.  Given that context, the alleged misrepresentations do not fall within the scope of the DTPA.  *See Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 725 (5th Cir. 2013) (where a plaintiff's complaint relates to a "pure loan transaction," a plaintiff cannot be considered a consumer for purposes of bringing suit under the DTPA); *Comeaux v. JPMorgan Chase Bank, N.A.*, No. H-13-2701, 2013 WL 5852429 *2 (S.D. Tex. 2013) ("Under the DTPA, the lending of money is not 'goods or services' for purposes of consumer status."); *Fix v. Flagstar Bank, FSB*, 242 S.W.3d 147, 160 (Tex. App.–Fort Worth 2007) ("Generally, a person cannot qualify as a consumer if the underlying transaction is a pure loan because money is considered neither a good nor a service"); ; *Darocy v. Chase Home Finance, LLC*, No. 3:10-CV-1259-L, 2012 WL 840909 at *3 (N.D. Tex. Mar. 9, 2012) (plaintiffs, who "sought to purchase a home with the original mortgage loan" and did not assert any "complaint about the home or real property itself," are "not consumers under the DTPA and *Flenniken* is inapplicable.").  Caine has therefore not alleged a plausible claim against Wells Fargo under the DTPA.

### D.     Fraud Claim

Caine alleges in his Third Amended Complaint that Wells Fargo engaged in fraud by making

8

a "representation such as the loan would be removed from Plaintiff's credit, and that the loan was no longer reporting on Plaintiff's credit" when Wells Fargo "knew the representations were false and/or made the representations recklessly, as a positive assertion, and without knowledge of its truth." Third Amended Complaint (Document No. 37) at 8.

In Texas, the elements of a claim of fraud by misrepresentation are: "(1) a misrepresentation that (2) the speaker knew to be false or made recklessly (3) with the intention to induce the plaintiff's reliance, followed by (4) actual and justifiable reliance (5) causing injury." *Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010); *see also Formosa Plastics Corp. v. Presidio Engineers and Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998) ("A fraud cause of action requires 'a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury.'").  Claims of fraud are subject to a heightened level of pleading under FED. R. CIV. P. 9(b), requiring the circumstances surrounding the fraud be pled with particularity.  FED. R. CIV. P. 9(b); *see Tuchman v. DSC Comm'n Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994), *cert. denied*, 522 U.S. 966 (1997).  In the Fifth Circuit, this requires the plaintiff to include allegations of "the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby." *Tuchman*, 14 F.3d at 1068; *see also Am. Realty Trust, Inc. v. Hamilton Lane Advisors*, 115 Fed. Appx. 662 (5th Cir. 2004) (noting that Rule 9(b) requirements have not been articulated in great detail because what constitutes particularity differs with the facts of each case).  The plaintiff must "'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'"

9

*Sullivan v. Leor Energy, LLC,* 600 F.3d 542, 551 (5th Cir. 2010) (quoting *Williams v. WMX Technologies, Inc.,* 112 F.3d 175, 177 (5th Cir. 1997)).  Further, although particularity is relaxed for scienter, pleading scienter requires more than simple allegations and a plaintiff must provide specific facts to support an inference of fraud.  *Am. Realty,* 115 Fed. Appx. at 667; *Tuchman,* 14 F.3d at 1068.

Here, as argued by Wells Fargo, Caine has not alleged his fraud claim with the particularity required by Rule 9(b).  In addition, Caine admitted on the record that Wells Fargo's erroneous reporting of his loan was corrected, and that as of July 2017, the loan was "reported as paid in full."  Transcript of Hearing (Document No. 44) at 5.  This is significant because Caine's fraud claim is premised on allegations that "the loan would be removed from Plaintiff's credit, and that the loan was no longer reporting on Plaintiff's credit."  Because Caine has admitted that the incorrect loan information *was* corrected by Wells Fargo, Caine cannot maintain a plausible fraud claim against Wells Fargo.

### E.    Tortious Interference Claims

Caine has asserted a claim for tortious interference with prospective contracts and tortious interference with ongoing contracts, alleging in his Third Amended Complaint in support of such claims that:

> 48.    There was a reasonable probability that the Plaintiff would have entered into a business relationship with a third person.  Plaintiff paid a down payment for the purchase of a newly constructed home.  Plaintiff was pre-approved for lending based on the credit reporting by [Wells Fargo] without all the inaccuracies as described above.  [Wells Fargo's] reporting inaccuracies put Plaintiff in danger of losing out on the house.  When the improper reporting resumed and/or was not removed, the Plaintiff was denied the home loan and lost the opportunity to buy the home.  [Wells Fargo] knew of Plaintiff's potential contractual relationship and [Wells Fargo] intentionally interfered with the relationship. . . .

10

* * *

51.     The Plaintiff had a valid contract to purchase a new home.  Plaintiff had put a down payment for the purchase of a new home.  Plaintiff was pre-approved for lending based on the credit reporting of [Wells Fargo] without all the inaccuracies as described above. [Wells Fargo's] reporting inaccuracies put Plaintiff in danger of losing out on the house.  When the improper reporting resumed and/or was not removed, the Plaintiff was denied the home loan and lost the opportunity to buy the home. [Wells Fargo] knew of Plaintiff's contractual relationship and [Wells Fargo] willfully and intentionally interfered with the contract. . . .

Third Amended Complaint (Document No. 37) at 9, 10.

A claim for tortious interference with an existing contract requires allegations and proof of:

"(1) an existing contract subject to interference; (2) a willful and intentional act of interference with

the contract; (3) that proximately caused the plaintiff's injury; and (4) caused actual damages or

loss." *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.,* 29 S.W.3d 74, 77 (Tex. 2000).  A claim

for tortious interference with a prospective relationship, in contrast, requires allegations and proof

that: "(1) there was a reasonable probability that the plaintiff would have entered into a business

relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the

relationship from occurring or knew the interference was certain or substantially certain to occur as

a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the

interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or

loss as a result." *Coinmach Corp. v. Aspenwood Apartment Corp.,* 417 S.W.3d 909, 923 (Tex. 2013);

*see also Wal–Mart Stores, Inc. v. Sturges,* 52 S.W.3d 711, 713 (Tex. 2001) ("to establish liability

for interference with a prospective contractual or business relation the plaintiff must prove that it was

harmed by the defendant's conduct that was either independently tortious or unlawful").

Here, while Caine alleges in a formulaic manner that Wells Fargo "knew" he was seeking

to purchase a new home, Caine has not alleged any facts that would support that conclusory allegation. In particular, Caine has not alleged how Wells Fargo knew, or would have known, that he was seeking to purchase a new home. Caine does not allege that he sought financing for the new home from Wells Fargo, or that he otherwise made Wells Fargo aware of the fact that he planned to purchase a new home and would be seeking financing to do so. In addition, from the date Caine contacted Wells Fargo about the double reporting of the mortgage loan on the Crim Court property, Caine alleges, and the documentation he has attached to his Third Amended Complaint shows, that Wells Fargo investigated the inaccuracies, acknowledged them, and took steps to have them corrected. Those allegations render Caine's tortious interference claims implausible.

**F.      Fair Credit Reporting Act Claim**

In support of the claim under the Fair Credit Reporting Act, Caine alleges in his Third Amended Complaint against Wells Fargo[1] that Wells Fargo "improperly reported Derogatory Credit Information about Plaintiff and ha[s] failed to stop the improper reporting and/or ha[s] failed to properly correct its errors with respect to improper reporting." Third Amended Complaint (Document No. 37) at 10.

The Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq, imposes obligations on consumer reporting agencies, users of consumer reports, and "entities that furnish information to consumer reporting agencies." *McIntosh v. E-Backgroundchecks.com, Inc.*, Civil Action No. 5:12-310-DCR, 2013 WL 5173725 *2 (E.D. Ky. Sept. 12, 2013). In this case, Caine seeks to impose liability on

---

[1] In the Third Amended Complaint, Caine added as Defendants three credit reporting agencies/bureaus: Experian Information Systems, Inc., Equifax Information Services, LLC, and Trans Union, LLC. Each has been served and each has now filed a responsive pleading (Document Nos. 49, 52 and 59).

Wells Fargo as an entity that furnished information to credit reporting agencies.

Entities that furnish information to credit reporting agencies are required to provide accurate information, 15 U.S.C. § 1681s-2(a), and to investigate the accuracy of the information they have provided when they receive notice that their information is being disputed, 15 U.S.C. § 1681s-2(b). While there is no private cause of action for alleged violations of § 1681s-2(a), there is a private cause of action for violations of § 1681s-2(b). *See Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009) ("The FCRA expressly creates a private right of action for willful or negligent noncompliance with its requirements. However, § 1681s–2 limits this private right of action to claims arising under subsection (b), the duties triggered upon notice of a dispute from a CRA. Duties imposed on furnishers under subsection (a) are enforceable only by federal or state agencies.") (internal citations and quotations omitted). To state a Fair Credit Reporting Act claim under 15 U.S.C. § 1681s-2(b) against an entity that furnishes information to credit reporting agencies, a plaintiff such as Caine must allege that he (1) "initiated a dispute with a credit reporting agency; (2) the credit reporting agency provided [the furnisher of the allegedly inaccurate information] with notice of the dispute; and (3) [the furnisher of the allegedly inaccurate information] failed to take appropriate action regarding the dispute." *Donnelly v. JP Morgan Chase, NA*, Civil Action No. H-13-1376, 2014 WL 429246 * 5 (S.D. Tex. Feb. 4, 2014) (quoting *Zoluaga v. BAC Home Loans Servicing, LP*, No. 4:11-CV-369, 2011 WL 5600377 *6 (E.D. Tex. Nov. 16, 2011)); *see also Conrad v. Barclays Bank Delaware*, Civil Action No. 4:17-CV-1045, 2017 WL 7796344 (S.D. Tex. July 27, 2017) ("In order to state a claim under § 1681s-2(b), Plaintiff would have to plead that she notified consumer reporting agencies of Barclay's inaccurate reporting, the agencies then notified Barclay's of the dispute, and that Barclay's failed to respond to the

13

complaints.").

Here, Caine's allegations do not conform with, or relate to, any of the elements required to state a claim under the FCRA. Caine has not alleged that he initiated a dispute with any *credit reporting agency*, has not alleged that any *credit reporting agency* provided Wells Fargo with notice of the dispute, and has not alleged that Wells Fargo, after receiving notice of the dispute from a *credit reporting agency* "failed to take appropriate action regarding the dispute." In addition, Caine *did* allege and *did* admit that Wells Fargo, after receiving Caine's dispute abut the information Wells Fargo had reported to credit reporting agencies, *did* correct the inaccurate information. Caine has therefore not alleged a plausible claim under § 1681s-2(b) of the FCRA. *See e.g., Truffin v. Moss Law Firm, P.C.*, No. A-16-CA-1210-SS, 2017 WL 1040497, at *5 (W.D. Tex. Mar. 16, 2017), *reconsideration denied*, No. A-16-CA-1210-SS, 2017 WL 8182820 (W.D. Tex. Apr. 13, 2017) ("While Plaintiff may have the right to dispute information directly with the furnisher, such communication does not satisfy the triggering condition for a private right of action [under the FCRA]"); *Lyons v. America's Wholesale Lender*, No. 3:13-CV-2608-B, 2014 WL 12640238, at *6 (N.D. Tex. Apr. 15, 2014) (dismissing plaintiff's FCRA claim where plaintiff conceded that once he notified defendant of his dispute, corrections were made to his credit report).

## IV.   Discussion – Availability of Amendment

Under FED. R. CIV. P. 15(a)(2) leave to amend should be freely given "when justice so requires." When a claim is subject to dismissal under Rule 12(b)(6) for failure to state a claim, "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies. . . unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or

14

unable to amend in a manner that will avoid dismissal." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

Here, given that Caine has amended his pleadings *three* times now and is still unable to articulate any factual allegations that would make any of his claims plausible as against Wells Fargo, and given that Wells Fargo has met Caine's successive pleading efforts with successive Rule 12(b)(6) motions, Caine should not, at this late date, be allowed to amend his complaint again in an effort to circumvent dismissal of his implausible claims.

## V.    Conclusion and Recommendation

Based on the foregoing and the conclusion that Plaintiff Andre Caine, despite having amended his pleading three times, has failed to state claim for which relief may be granted, the Magistrate Judge

RECOMMENDS that Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss (Document No. 38) be GRANTED and that Plaintiff's claims against Wells Fargo Bank, N.A. be DISMISSED WITH PREJUDICE for failure to state a claim.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record.  Within fourteen (14) days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b), and General Order 80-5, S.D. Texas.  Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc).  Moreover, absent plain error, failure to file objections within the fourteen day

15

period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1429 (5th Cir. 1996).  The original of any written objections shall be filed with the United States District Clerk.

Signed at Houston, Texas, this ⟋4u day of June, 2018.

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE

16